```
IN THE UNITED STATES DISTRICT COURT
  FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| WILLIAM HOUSTON, | CIVIL ACTION |
|           Plaintiff, | |
| v. | No. 03-3494 |
| EASTON AREA SCHOOL DISTRICT, | |
|           Defendant. | |

HENRY S. PERKIN                                               MARCH 2, 2010
UNITED STATES MAGISTRATE JUDGE

## **MEMORANDUM**

       Presently before the Court following the remand of this case from the United States Court of Appeals for the Third Circuit is Defendant's Motion in Limine seeking exclusion of evidence relating to "historical inequities," a "secret code" and evidence regarding Joseph Piazza, a former Superintendent of the Defendant, Easton Area School District. For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

**I.**    **BACKGROUND.**

       A one-day bench trial was held on October 15, 2008. In a February 24, 2009 Memorandum Opinion and Verdict, this Court entered judgment for Defendant. On December 8, 2009, the United States Court of Appeals for the Third Circuit, in a non-precedential opinion, vacated the judgment and remanded this case for a new trial. On December 23, 2009, Mr. Houston's Motion to

Vacate Waiver of Jury Trial was granted.  On December 24, 2009, in accordance with the December 8, 2009 decision by the United States Court of Appeals for the Third Circuit remanding this case for a new trial and for this Court to "engage in a factual analysis of the relevant factors to determine whether any of the excluded comparators is similarly situated to [Plaintiff]," the parties were ordered to provide briefs regarding this issue not later than January 8, 2010.  On January 7, 2010, the parties filed a Joint Motion for Enlargement of Time to File Briefs Regarding Appropriate Comparators to Plaintiff.  The Motion was granted *nunc pro tunc* on January 11, 2010, extending the deadline for filing briefs to January 22, 2010.

On February 9, 2010, this Court vacated an October 3, 2005 order which had partially granted Defendant's prior motion in limine and an October 8, 2008 order denying Plaintiff's motion for reconsideration of the October 3, 2005 order.  Defendant's previous motion in limine was similar to the motion currently at issue.  On February 15, 2010, Defendant filed the instant Motion in Limine.  On February 18, 2010, Plaintiff filed a Response to the Motion, which Plaintiff supplemented in a February 22, 2010 letter, and Defendant submitted a letter Reply dated February 26, 2010.

**II. STANDARD.**

Defendant moves to preclude Plaintiff from introducing evidence on the grounds that it is not relevant or unfairly prejudicial. "Relevant evidence" according to Federal Rule of Evidence 401 is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.E. 401. An exception to the rule that all relevant evidence is generally admissible is Federal Rule of Evidence 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403. Each of Defendant's arguments is hereafter examined.

**III. DISCUSSION.**

On December 8, 2009, the United States Court of Appeals for the Third Circuit, in a non-precedential opinion, vacated the judgment of this Court in favor of Defendant following a non-jury trial and remanded this case for a new trial. The Court stated:

> The District Court granted in part the School
> District's motion in limine, excluding
> evidence of the retirement packages of three
> of the four alleged comparators on the basis
> that they were not similarly situated to
> Houston because their positions were not

3

> covered under a Pennsylvania statute commonly
> known as Act 93, 24 P.S. § 11-1164. Houston
> challenges the court's exclusion of
> comparator evidence from the trial. Because
> we find Act 93 status should not have been
> determinative as to whether the employees
> were similarly situated to Houston, we will
> vacate the judgment of the District Court.

Houston v. Easton Area Sch. Dist., slip op., p. 2 (3d Cir. Dec. 8, 2009). On February 9, 2010, this Court, in accordance with the Third Circuit's directive for a new trial, vacated its October 3, 2005 order partially granting Defendant's motion in limine and this Court's October 8, 2008 order denying Plaintiff's motion to reconsider the October 3, 2005 order. In so doing, it was the sole intention of this Court to comply with the Third Circuit's directive.

Notwithstanding the Third Circuit's decision remanding this case for a new trial and this Court's February 9, 2010 Order, Defendant moves to exclude evidence, testimony and argument regarding an alleged "secret code," "historical inequities" and the retirement of Joseph Piazza on the basis that the 2003 exclusion of evidence is the law of the case. Defendant characterizes the Third Circuit decision as leaving intact the exclusion of historical evidence, exclusion of a "secret code" and exclusion of Piazza as a comparator, therefore Defendant maintains that exclusion of this evidence is the law of the case.

In reviewing this argument, we return to the Third Circuit decision. On appeal, Plaintiff did not challenge this

4

Court's exclusion of historical inequities evidence. Id., pp. 5-6 n.6. Similarly, the Third Circuit noted that, on appeal, Plaintiff appeared to concede that Piazza, as Superintendent, was not an appropriate comparator. Id., p. 10 n.7. Because Defendant again moves in the instant Motion for exclusion of historical inequity evidence and for exclusion of Piazza as a comparator, we will hereafter examine these issues.

**A. Comparator Evidence.**

On February 9, 2010, this Court, in accordance with the Third Circuit's directive for a new trial, vacated its October 3, 2005 order partially granting Defendant's motion in limine and this Court's October 8, 2008 order denying Plaintiff's motion to reconsider the October 3, 2005 order. The February 9, 2010 Order effectively cancelled out this Court's prior rulings excluding Piazza, Hettel and Ciccarelli as Plaintiff's comparators.

In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees "(I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, (iv) had comparable experience, education, and other qualifications provided the employer considered these latter factors in making the personnel decision." Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520,m 522 (7th Cir. 2003). Thus, we must review whether Plaintiff's

5

alleged comparators, Karl Hettel, Louis Ciccarelli, Roger Wrazien and Joseph Piazza, are appropriate comparators to Plaintiff.[1]

    1. <u>Joseph Piazza</u>.

Defendant specifically moves to preclude evidence, testimony and/or argument regarding the retirement of Joseph Piazza, one of the former Superintendents of Defendant, on the basis that he is not similarly situated to Plaintiff and cannot be considered a comparator to Plaintiff, therefore any evidence regarding his retirement package is not relevant in accordance with Federal Rule of Evidence 401. In its remand decision, the Third Circuit stated:

> [w]e note that Houston appears to concede that Piazza, as Superintendent, is not an appropriate comparator. In his Reply Brief, Houston contends that he is similarly situated to all the cabinet members (Cicarelli, Hettel and Wrazien) because all the cabinet members were subject to the same standards in employment and they were all responsible for advising the superintendent. Piazza was not a cabinet member - as Superintendent, he supervised the cabinet members.

<u>Houston v. Easton Area Sch. Dist.</u>, Slip Op., p. 10 n.7 (3d Cir. Dec. 8, 2009). Plaintiff's brief regarding possible comparators is silent regarding Plaintiff's intention to offer evidence of Piazza's retirement. During a February 16, 2010 telephone

---

[1] This analysis is performed pursuant to the Third Circuit's directive that "[o]n remand, the District Court should engage in a factual analysis of the relevant factors to determine whether any of the excluded comparators is similarly situated to Houston." <u>Houston v. Easton Area Sch. Dist.</u>, slip op., p. 11 (3d Cir. Dec. 8, 2009).

conference with this Court and Defendant's counsel, and at the February 19, 2010 final pretrial conference, Plaintiff's counsel conceded that Piazza is not a comparator to Plaintiff.

Although Plaintiff concedes that Piazza is not a comparator to Plaintiff, Plaintiff's counsel intends to introduce evidence surrounding Piazza's retirement, presumably correspondence Piazza submitted in conjunction with his retirement. During the February 16, 2010 telephone conference, Defendant's counsel stated that the Defendant would not object to introduction of that letter. This verbal statement by counsel was in direct opposition to the instant Motion to preclude documents, testimony, evidence and/or argument at trial regarding Mr. Piazza's retirement.

Mindful of Federal Rule of Evidence 403, the probative value of correspondence regarding Piazza's retirement is not "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403. This information may not only assist the Plaintiff in his attempts to show that he was treated differently by the Defendant, it may also assist the Defendant in presenting a legitimate, non-discriminatory reason why Plaintiff was treated differently than other Caucasian employees.

7

2. <u>Karl Hettel, Louis Ciccarelli and Roger Wrazien</u>.

Hettel and Ciccarelli were promised payment for 100% of their unused sick days at his retirement. Hettel, as Defendant's Director of Personnel before he retired on April 8, 1999, and Ciccarelli, who was Defendant's Business Manager before he retired in 1999, were excluded from Act 93. Act 93 is the section of the Pennsylvania Public School Code that governs compensation plans. Wrazien, who was Director of Elementary Education, and Plaintiff, who was Director of Support Services, were both Act 93 employees, subject to the same compensation plans. Defendant argues that Hettel and Ciccarelli were not similarly situated to Plaintiff because they were not Act 93 employees.

Although they did not hold the same job descriptions, Hettel, Ciccarelli, Plaintiff and Wrazien were cabinet level employees or high level central office administrators who reported to or were subordinate to the Superintendent. All of these men except Hettel were labeled Directors of various departments or divisions, Hettel was arguably the director of the Defendant's business unit. It is unclear if these individuals were subject to the same standards. Wrazien had thirty-eight years of service to Defendant, Plaintiff had thirty-six years of service to Defendant, Hettel had thirty-four and one-half years of service to Defendant, and Ciccarelli had twenty-one and one-

8

half years of service to Defendant.  Ciccarelli did not hold a four-year college degree, but both Hettel and Plaintiff held Master's degrees, and Wrazien had at least a college degree because he was a long-time teacher with Defendant.  Hettel, Wrazien and Ciccarelli all retired within one year after Plaintiff retired.

Based on the above, it appears that Hettel, Wrazien and Ciccarelli are appropriate comparators to Plaintiff, and information related to these individuals and their retirements will be submitted to the jury.

**B.  Secret Code Language.**

Defendant next moves to exclude evidence of an alleged "secret code" in various employees' retirement letters.  Defendant notes that out of Piazza, Hettel, Ciccarelli and Wrazien, the four Caucasian males Plaintiff alleges were treated more favorably than him, only Wrazien and Ciccarelli used alleged "secret code" language in their retirement letter.  Defendant notes that in Wrazien's letter, he requests "medical benefits" when he states "I respectfully request that I be extended the same courtesies that have been provided to other Central Office Administrators upon retirement until both my wife and I are Medicare eligible."  2/26/99 Ltr. from Wrazien to Meck.

Because evidence of the retirements of Ciccarelli and Wrazien will not be excluded on the basis that they are

9

comparators to Plaintiff, both retirement letters of Ciccarelli and Wrazien are admissible and may be submitted to the jury for their consideration.  Moreover, these letters may be relevant under Federal Rule of Evidence 401 to the jury's determination of whether Defendant discriminated against Plaintiff with respect to payment of Plaintiff's accrued sick days at his retirement.

**C.   Historical Inequities.**

Finally, Defendant moves to exclude evidence, argument and testimony regarding "historical inequities" relating to alleged racial discrimination that Plaintiff claims took place during Plaintiff's thirty years working at the Defendant School District.  According to Defendant, the statute of limitations on these allegedly discriminatory acts bars documents, evidence and/or argument at trial.

In his Complaint, Plaintiff averred that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the unfair employment practice, a Notification of Right to Sue dated April 28, 2003 was received from the EEOC on or about April 30, 2003, and Plaintiff filed this Complaint within 90 days of receipt of the Notification of the Right to Sue.  Compl., p. 1 ¶4.  The EEOC charge of discrimination was never available to this Court, therefore we refer to the Complaint to reveal Plaintiff's claims before this Court.

> Plaintiff made the following claims in the Complaint:
>
> 13. On August 14, 2001, Plaintiff learned for the first time that Defendant intentionally purposefully implemented a secret, undisclosed racially discriminatory policy for Cabinet level management upon their retirement, namely, white Cabinet members received One Hundred (100%) percent of accrued vacation days at retirement and One Hundred (100%) percent of accrued sick days, but African American Cabinet members only received Twenty-Five (25%) percent of accrued sick days.
>
> 14. On August 14, 2001, Plaintiff learned and discovered for the first time about the discriminatory retirement policy, namely, that upon retirement, Defendant intentionally discriminatorily paid white Cabinet level management One Hundred (100%) percent of accrued sick days and paid African American Cabinet level management Twenty-Five (25%) percent of accrued sick days, and Defendant hid the racially discriminating policy from Plaintiff and the public until Plaintiff learned it on August 14, 2001.
>
> 15. As a direct and proximate result of Defendant's invidiously discriminatory actions, as aforesaid, Plaintiff has suffered damages due to loss of past income, benefits and commissions, and/or earnings in excess of Seventy-Five Thousand ($75,000.00) Dollars.
>
> 16. As a direct and proximate result of Defendant's invidiously discriminatory actions, as aforesaid, Plaintiff suffered mental anxiety, anguish, distress, humiliation, and sleeplessness which damages exceed Seventy-Five Thousand ($75,000.00) Dollars.

Compl., pp. 2-3 ¶¶ 13-16. Plaintiff alleged that on his retirement, he was subjected to disparate treatment in his retirement benefits on the basis of his race. During the

discovery period, the depositions of Constance Mazza, Alfredean Jones, and Plaintiff were taken.

Plaintiff intends to submit "historical evidence" that there existed a pattern or practice of disparity in the payment of salaries to assistant principals and principals since the 1970s. Defendant seeks to exclude this evidence as time-barred.[2]

As previously noted in this Court's decision on Defendant's first Motion in Limine, an employment discrimination charge "shall be filed by or on behalf of the person aggrieved within three hundred (300) days after the alleged unlawful employment practice occurred" in a state such as Pennsylvania with an agency analogous to the EEOC. See 42 U.S.C. § 2000e-5(f)(1). Otherwise, a plaintiff must file the charge of unlawful discrimination within one hundred eighty (180) days of the alleged act of discrimination. In Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held that the three hundred day and one hundred eighty day time periods are akin to a statute of limitations. Thus, if an aggrieved party fails to file a timely complaint, he is precluded from judicial remedy.

Plaintiff's discrimination claim in his Complaint is based upon discrimination that occurred at his retirement.

---

[2] On appeal, Plaintiff did not challenge this Court's decision excluding "historical inequity" evidence. Houston v. Easton Area Sch. Dist., slip op., pp. 5-6 n.6 (3d Cir. Dec. 8, 2009).

Plaintiff did not amend his Complaint during the course of this litigation to include a pay disparity claim.  Pursuant to Federal Rule of Evidence 401, this evidence may be relevant with respect to show Defendant's intent.  However, the probative value of this historical inequity evidence is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" because it involves claims that were not pled by Plaintiff in his Complaint.  <u>See</u> F.R.E. 403.

Assuming, *arguendo*, that Plaintiff presents this historical inequity evidence as a continuing violation theory.  In order for this information to escape the bar of the statute of limitations, Plaintiff would be required to demonstrate that the Defendant's conduct is more than the occurrence of isolated or sporadic acts.  <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001).  The three factors required for a continuing violation theory are: (1) subject matter -- whether the violations constitute the same type of [harm], tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act

would continue even in the absence of a continuing intent to discriminate.  Id.  Plaintiff's accusations that Defendant discriminated against him with respect to pay for over twenty years since the 1970s are vague and non-specific as to time and are remote from Plaintiff's 1998 retirement.  Despite the alleged degree of permanence of this discriminatory pay disparity, the alleged disparity should have triggered Plaintiff's awareness of his need to timely assert his rights.  Once Mr. Houston failed to institute suit within the applicable statutory period for inadequate pay, he lost his ability to resurrect these claims by characterizing them as a continuing violation.  Accordingly, Defendant's Motion in Limine with respect to evidence regarding "historical inequities" will be granted and historical inequity evidence will be excluded from the purview of the jury.

**IV. CONCLUSION.**

Defendant's Motion in Limine is denied with respect to exclusion of evidence surrounding the retirements of Piazza, Hettel, Wrazien and Ciccarelli and this evidence.  The Motion is granted with respect to historical inequity evidence.

A separate Order follows consistent with this Memorandum.

14