**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                         :
WILLIAM HOUSTON,                         :        CIVIL ACTION
                                         :
                      Plaintiff,         :
                                         :
          v.                             :        No. 03-3494
                                         :
EASTON AREA SCHOOL DISTRICT,             :
                                         :
                      Defendant.         :
_____  :

HENRY S. PERKIN                                     OCTOBER 25, 2010
United States Magistrate Judge

## MEMORANDUM

On March 8, 2010, after a three-day jury trial, civil judgment upon a defense

verdict was entered in favor of Defendant, the Easton Area School District against the Plaintiff,

William Houston.  J., Document No. 128.  On March 11, 2010, Plaintiff filed a motion for a new

trial pursuant to Federal Rule of Civil Procedure 59, alleging errors of law.  For the following

reasons, Mr. Houston's Motion is denied.

## I.    BACKGROUND.

Mr. Houston retired from his position with the Defendant Easton Area School

District in July 1999.  On June 5, 2003, he brought suit against the Defendant under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, alleging the School

District discriminated against him based on his African American race when he received

payment for only 25% of the value of his unused sick days upon his retirement, while four

comparable white employees received payment for 100% of their unused sick days upon their

respective retirements.  The case was originally assigned to the Honorable James Knoll Gardner,

and on February 17, 2004, following the consent of the parties, Judge Gardner ordered the referral of the case to United States Magistrate Judge Arnold C. Rapoport for all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Judge Rapoport denied Defendant's motion for summary judgment on November 4, 2004, but on October 3, 2005, granted in part Defendant's motion in limine, excluding evidence of the retirement packages of three of the four alleged comparators on the basis that they were not similarly situated to Mr. Houston because their positions were not covered under a Pennsylvania statute commonly referred to as Act 93, 24 P.S. § 11-1164, excluding evidence of historical inequities and excluding secret code language in various employees' retirement letters.  See Document Nos. 30, 38.  Judge Rapoport then placed this case in suspense on January 24, 2006, pending the conclusion of Wrazien v. Easton Area School District,[1] a case pending in the Court of Common Pleas of Northampton County.  On March 11, 2008, following notification by counsel that the state court case had concluded, the case was transferred out of suspense and referred to arbitration.

On July 24, 2008, an arbitration award was entered, and on July 29, 2008, Mr. Houston filed a request for a trial de novo.  The parties informally consented to a bench trial during a telephone conference with Magistrate Judge Rapoport, and on July 31, 2008, Chief Judge Harvey J. Bartle, III, reassigned the case to the undersigned.

On August 6, 2008, Mr. Houston filed a motion for reconsideration of Judge

---

[1]	Wrazien v. Easton Area Sch. Dist., Northampton County, No. C-48-CV-2001-7915.  The decision of the Honorable Anthony S. Beltrami, Judge of the Court of Common Pleas of Northampton County was affirmed by the Commonwealth Court of Pennsylvania at 926 A.2d 585 (Pa. Cmwlth. June 18, 2007)(No. 1891CD2006), *appeal denied*, 937 A.2d 448 (Pa. Dec. 4, 2007)(Table, No. 598 MAL 2007).

Rapoport's decision on the motion in limine.  On October 8, 2008, the motion for reconsideration was denied.  A one-day bench trial was held on October 15, 2008.  In a February 24, 2009 Memorandum Opinion and Verdict, this Court entered judgment for the Defendant.  <u>See</u> Document No. 81.

Mr. Houston filed a timely appeal challenging the decision of the motion in limine excluding comparator evidence from the bench trial.  On appeal, Mr. Houston did not challenge the exclusion of the historical inequities evidence.  <u>See</u> Third Cir. Op., pp. 5-6 n.6.  On December 8, 2009, the United States Court of Appeals for the Third Circuit, in a non-precedential opinion, vacated the judgment in favor of Defendant and remanded this case for a new trial.  The Court stated that:

> [Mr.] Houston challenges the court's exclusion of comparator evidence from the trial.  Because we find Act 93 status should not have been determinative as to whether the employees were similarly situated to [Mr.] Houston, we will vacate the judgment of the District Court.
>
> . . .
>
> We find that under the facts of this case, Act 93 status should not have been the dispositive factor for purposes of determining whether [Mr.] Houston was similarly situated to other School District administrators.
>
> . . .
>
> The similarly situated analysis is for the District Court to determine in the first instance.  *See Mendelsohn*, 128 S.Ct. at 1146 ("[Questions of relevance and prejudice are for the District Court to determine in the first instance." (citing *U.S. v. Abel*, 469 U.S. 45, 54 (1984))).  But it appears that Ciccarelli and Hettel may be similarly situated to [Mr.] Houston. . . . . Evidence of additional similarly situated employees outside of [Mr.] Houston's protected class - each of whom received or was promised 100% of his sick

pay upon retirement - likely would have changed the entire complexion of the trial.

        Accordingly, we will vacate the judgment in favor of the School District and remand for a new trial. On remand, the District Court should engage in a factual analysis of the relevant factors to determine whether any of the excluded comparators is similarly situated to [Mr.] Houston.[fn8]

> [fn8] The District Court also excluded evidence of alleged "secret code" language used in Ciccarelli's retirement letter because evidence of his retirement was excluded as not comparable to Houston. If the court determines on remand that Ciccarelli is an appropriate comparator, his retirement letter should be admissible in accordance with the court's ruling that similar language in Wrazien's letter was admissible.

Houston v. Easton Area Sch. Dist., slip op., pp. 2, 9, 10, 11 (3d Cir. Dec. 8, 2009).[2]

        Following remand, Mr. Houston moved to vacate waiver of his jury trial on December 11, 2009 and the motion was granted on December 24, 2009. Defendant filed a motion in limine on February 15, 2010. On February 19, 2010, a final pretrial conference was held, and supplemental briefing on the historical inequities issue was submitted on February 22 and 26, 2010. See Document Nos. 120, 121. On March 2, 2010, Defendant's motion in limine was denied with respect to exclusion of evidence surrounding the retirements of Piazza, Hettel, Wrazien and Ciccarelli, but was granted with respect to historical inequity evidence. See

---

[2]     The Third Circuit decision did not acknowledge my footnote in the February 24, 2009 Memorandum Opinion wherein I stated the following:

> Although I affirmed Judge Rapoport's order deciding the Defendant's motion in limine, the parties agreed at trial that the entire transcript of the proceedings in *Roger J. Wrazien v. Easton Area School District* ("EASD"), Northampton County, No. C-48-CV-2001-7915, was to be introduced as a joint exhibit and was evidence in this case. The *Wrazien* Transcript contained testimony regarding the retirements of Messrs. Ciccarelli, Hettel and Wrazien, including language in their retirement letters notifying EASD of their decision to retire. As a result, I have considered that testimony and evidence in this case notwithstanding Judge Rapoport's order and my denial of reconsideration.

Document No. 81, Mem. Op. And Verdict, 2/24/09, p. 3 n.3.

Document Nos. 117, 118. The historical inequity evidence included deposition testimony from Mr. Houston, Alfredean Jones and Constance Mazza that Mr. Houston and Mr. Jones suffered disparity in their pay beginning in 1975 that continued throughout the entirety of their careers with the Defendant School District. A jury trial was held on March 3, 4 and 5, 2010 which again resulted in a verdict for Defendant. Although I excluded argument regarding Plaintiff's alleged historical inequities, I allowed Mr. Houston to testify regarding past acts of discrimination. Specifically, I instructed the jury that:

> Plaintiff will testify regarding past acts of discrimination he allegedly suffered in the past. This testimony is admissible with respect to Plaintiff's claim of emotional distress. These past acts of discrimination are not claims in this case. They are being provided to you by the Plaintiff for the limited purpose of explaining his claim of emotional distress. As with all evidence, it is for you to determine what weight to give this evidence.

This instruction was given during Mr. Houston's direct testimony on March 4, 2010. Mr. Houston then testified regarding three specific acts of discrimination that he had suffered throughout his life. On March 5, 2010, the jury returned a verdict for Defendant, and on March 8, 2010, civil judgment was entered in favor of Defendant. See Document No. 128. On March 11, 2010, Plaintiff filed the instant Motion for a New Trial. See Document No. 130. Defendant filed a Response in Opposition to Plaintiff's Motion on March 26, 2010. See Document No. 131.

## II.    STANDARD.

The ordering of a new trial is a matter committed to the sound discretion of the district court. Bonjorno v. Kaiser Alum. & Chem. Corp., 752 F.2d 802, 812 (3d Cir. 1984), cert. denied, 477 U.S. 908 (1986); Fed. R. Civ. P. 59. The grant of a new trial may be justified where,

for example, material evidence has been improperly excluded or a material issue has been improperly submitted to the jury.  See Petree v. Victor Fluid Power, Inc., 887 F.2d 34, 41 (3d Cir. 1989); 6A James M. Moore, et al., Moore's Federal Practice, ¶ 59.08.

When evaluating a motion for a new trial on the basis of trial error, the Court must first determine whether an error was made in the course of trial, and then must determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa.1993) (citations omitted).  "Absent a showing of 'substantial' injustice or 'prejudicial' error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict." Goodwin v. Seven-Up Bottling Co. of Phila., CIV.A. No. 96-CV-2301, 1998 WL 438488, at *3 (July 31, 1998) (citing Videon Chevrolet, Inc., v. Gen. Motors Corp., Civ. No. 91-4202, 1994 WL 188931, at *2 (E.D. Pa. May 16, 1994), aff'd, 46 F.3d 1120 (3d Cir.1994)).  A court can only exercise its discretion to grant a new trial because the verdict was against the weight of the evidence when the failure to do so would result in injustice, or would shock the conscience of the court. Windsor Shirt Co. v. N.J. Nat'l Bank, 793 F.Supp. 589, 595 (E.D. Pa. 1992)(citing Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348 (3d Cir.1991); Feingold v. Raymark Indus., Inc., 1988 WL 76114 at *3 (E.D. Pa. July 19, 1988) and Grace v. Mauser-Werke GMBH, 700 F.Supp. 1383, 1387 (E.D. Pa. 1988)).

III.    **DISCUSSION**.

In his Motion for New Trial, Mr. Houston alleges that:

(1) the Court erred by granting, in part, Defendant's second Motion in Limine and precluding Plaintiff from testifying about ongoing racial discrimination in his salary which allegedly started when Plaintiff became a principal and continued

6

through his tenure at Easton Area School District;

(2) the Court committed prejudicial error by refusing to instruct the jury in accordance with the determination in <u>Wrazien v. Easton Area School District</u>[3] that 25% payment for accrued sick days at the time of an employee's retirement was a minimum and not a maximum benefit;

(3) the court prejudiced plaintiff by allowing into evidence testimony and charts indicating that non-cabinet officials received only 25% of their accrued sick days;

(4) the court compounded the error by allowing the jury to see Defendant's Exhibit No. 6 which itemized each and every non-cabinet official who only received 25%;

(5) whether or not the Defendant opened the door for admissibility of discrimination in salary differential; and

(6) whether or not the Plaintiff was denied his Constitutional right to a fair trial.

<u>See</u> Pl.'s Mot. for New Trial, pp. 6-7.[4] Each of Plaintiff's arguments in support of his Motion for New Trial are hereafter examined.

### A. Whether The Court Erred in Precluding Plaintiff From Testifying About Ongoing Racial Discrimination in His Salary Which Allegedly Started When Plaintiff Became A Principal and Continued Through His Tenure at Easton Area School District.

Mr. Houston's first argument is that this Court erred in precluding him from testifying about ongoing racial discrimination in his salary while he was employed at the Defendant Easton Area School District. This argument challenges the pre-trial decision granting the Defendant's motion in limine and excluding evidence that Mr. Houston and Alfredean Jones suffered historical inequities in salary during employment. It is important to note that this

---

[3]    Mr. Houston's counsel did not provide the citation for the <u>Wrazien</u> case, but he is referring to <u>Wrazien v. Easton Area Sch. Dist.</u>, 926 A.2d 585 (Pa. Cmwlth. June 18, 2007).

[4]    We note that Plaintiff's filings lack page numbers. We will refer to the pages of the submissions by the pagination added by the PACER system.

historical inequities evidence was also precluded from the bench trial but on appeal to the Third Circuit from the unfavorable decision following the bench trial, Mr. Houston did *not* challenge the pre-trial decision excluding this evidence. Following remand on another issue, this Court wholly vacated the decision on the motion in limine, and Defendant filed another motion in limine, containing identical arguments as the first motion in limine. The second motion in limine was granted as to the exclusion of evidence regarding historical inequities, and trial commenced. Mr. Houston intended to offer his personal testimony and that of Connie Mazza and Alfredean Jones that Mr. Houston and Mr. Jones, the first African American administrators in the Defendant School District, were subject to racial discrimination in salary starting in 1975 and continuing throughout their careers at the Defendant Easton Area School District. This was the only evidence regarding historical inequities offered by Plaintiff in support of his claim for racial discrimination as to his retirement benefit of 25% of unused sick days. Following the jury's verdict against Mr. Houston, he now claims that the exclusion of historical inequities evidence was erroneous.

   During the final pretrial conference, the Court discussed the Plaintiff's renewed request to introduce evidence of historical inequities. N.T., 2/19/10, pp. 2-16. The Court inquired of Plaintiff's counsel as to when the events regarding historical inequities occurred. Plaintiff's counsel was not clear on the precise time frame, but admitted that "it's a long time ago." <u>Id.</u> at 3. When pressed for more detail, counsel stated "it could be twenty years. It's a long time. We'll stipulate it's a long time." <u>Id.</u> at 4. Plaintiff's counsel argued that "even though the initial incident occurred ten, twenty, thirty years ago it had consequences in the present." <u>Id.</u> at 5. Plaintiff's and Defendant's counsel were permitted to submit supplemental

briefs following the final pretrial conference.

On March 2, 2010, Defendant's motion in limine was partially granted and historical inequities evidence was excluded. <u>See</u> Document Nos. 117, 118. The following is the portion of the opinion excluding historical inequities evidence:

**C. Historical Inequities.**

Finally, Defendant moves to exclude evidence, argument and testimony regarding "historical inequities" relating to alleged racial discrimination that Plaintiff claims took place during Plaintiff's thirty years working at the Defendant School District. According to Defendant, the statute of limitations on these allegedly discriminatory acts bars documents, evidence and/or argument at trial.

In his Complaint, Plaintiff averred that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the unfair employment practice, a Notification of Right to Sue dated April 28, 2003 was received from the EEOC on or about April 30, 2003, and Plaintiff filed this Complaint within 90 days of receipt of the Notification of the Right to Sue. Compl., p. 1 ¶4. The EEOC charge of discrimination was never available to this Court, therefore we refer to the Complaint to reveal Plaintiff's claims before this Court.

Plaintiff made the following claims in the Complaint:

13. On August 14, 2001, Plaintiff learned for the first time that Defendant intentionally purposefully implemented a secret, undisclosed racially discriminatory policy for Cabinet level management upon their retirement, namely, white Cabinet members received One Hundred (100%) percent of accrued vacation days at retirement and One Hundred (100%) percent of accrued sick days, but African American Cabinet members only received Twenty-Five (25%) percent of accrued sick days.

14. On August 14, 2001, Plaintiff learned and discovered for the first time about the discriminatory retirement policy, namely, that upon retirement, Defendant intentionally discriminatorily paid white Cabinet level management One Hundred (100%) percent of accrued sick days and paid African American Cabinet level management Twenty-Five (25%) percent of accrued sick days, and Defendant hid the racially discriminating policy from Plaintiff and the public until Plaintiff learned it on August 14, 2001.

15. As a direct and proximate result of Defendant's invidiously

discriminatory actions, as aforesaid, Plaintiff has suffered damages
due to loss of past income, benefits and commissions, and/or
earnings in excess of Seventy-Five Thousand ($75,000.00)
Dollars.

16. As a direct and proximate result of Defendant's invidiously
discriminatory actions, as aforesaid, Plaintiff suffered mental
anxiety, anguish, distress, humiliation, and sleeplessness which
damages exceed Seventy-Five Thousand ($75,000.00) Dollars.

Compl., pp. 2-3 ¶¶ 13-16. Plaintiff alleged that on his retirement, he was
subjected to disparate treatment in his retirement benefits on the basis of his race.
During the discovery period, the depositions of Constance Mazza, Alfredean
Jones, and Plaintiff were taken. Plaintiff intends to submit "historical evidence"
that there existed a pattern or practice of disparity in the payment of salaries to
assistant principals and principals since the 1970s. Defendant seeks to exclude
this evidence as time-barred.[Fn]

As previously noted in this Court's decision on Defendant's first Motion in
Limine, an employment discrimination charge "shall be filed by or on behalf of
the person aggrieved within three hundred (300) days after the alleged unlawful
employment practice occurred" in a state such as Pennsylvania with an agency
analogous to the EEOC. See 42 U.S.C. § 2000e-5(f)(1). Otherwise, a plaintiff
must file the charge of unlawful discrimination within one hundred eighty (180)
days of the alleged act of discrimination. In Robinson v. Dalton, 107 F.3d 1018,
1021 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held
that the three hundred day and one hundred eighty day time periods are akin to a
statute of limitations. Thus, if an aggrieved party fails to file a timely complaint,
he is precluded from judicial remedy.

Plaintiff's discrimination claim in his Complaint is based upon
discrimination that occurred at his retirement. Plaintiff did not amend his
Complaint during the course of this litigation to include a pay disparity claim.
Pursuant to Federal Rule of Evidence 401, this evidence may be relevant with
respect to show Defendant's intent. However, the probative value of this historical
inequity evidence is "outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury, or by considerations of undue delay, waste of
time, or needless presentation of cumulative evidence" because it involves claims
that were not pled by Plaintiff in his Complaint. See F.R.E. 403.

Assuming, arguendo, that Plaintiff presents this historical inequity
evidence as a continuing violation theory. In order for this information to escape
the bar of the statute of limitations, Plaintiff would be required to demonstrate that
the Defendant's conduct is more than the occurrence of isolated or sporadic acts.
Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). The three factors
required for a continuing violation theory are: (1) subject matter – whether the

violations constitute the same type of [harm], tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  Id.  Plaintiff's accusations that Defendant discriminated against him with respect to pay for over twenty years since the 1970s are vague and non-specific as to time and are remote from Plaintiff's 1998 retirement.  Despite the alleged degree of permanence of this discriminatory pay disparity, the alleged disparity should have triggered Plaintiff's awareness of his need to timely assert his rights.  Once Mr. Houston failed to institute suit within the applicable statutory period for inadequate pay, he lost his ability to resurrect these claims by characterizing them as a continuing violation.  Accordingly, Defendant's Motion in Limine with respect to evidence regarding "historical inequities" will be granted and historical inequity evidence will be excluded from the purview of the jury.

[Fn] On appeal, Plaintiff did not challenge this Court's decision excluding "historical inequity" evidence. Houston v. Easton Area Sch. Dist., slip op., pp. 5-6 n.6 (3d Cir. Dec. 8, 2009).

See Document Nos. 117-118; 3/2/10 Mem. Op.

In the instant Motion for New Trial, Plaintiff first contends that I erred in excluding evidence of ongoing discrimination because I allegedly postured this evidence as new claims barred by the statues of limitation, yet Plaintiff claims that he never offered the historical inequities evidence for that purpose.  In this regard, the March 2, 2010 memorandum opinion regarding Plaintiff's motion in limine speaks for itself.   This Court did not exclude the evidence on the expiration of the applicable statute of limitation.  Rather, we excluded the information because it involved claims not pled in Plaintiff's complaint and the probative value of this historical inequity evidence was "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"  pursuant to Federal Rule of Evidence 403.

Plaintiff next contends that I misunderstood case law regarding ongoing discrimination tolling the statute of limitations. For support, Plaintiff cites case law from the Ninth Circuit, specifically Sosa v. Hiraoka, 920 F.2d 1451 (9th Cir. 1990), a case in which a Mexican American academic sued his employer for national origin discrimination under Title VII, and Anderson v. Reno, 190 F.3d 930 (9th Cir. 1999), another case from the Ninth Circuit in which the appellate court reversed summary judgment and applied the continuing violation doctrine to admit sexual harassment evidence spanning eight years which was offered by a female FBI agent.

Sosa alleged a series of discriminatory incidents starting in 1982 but he filed his discrimination charge with the Equal Employment Opportunity Commission in 1985. In that case, the Ninth Circuit held that Sosa could use the continuing violation doctrine to bring in the earlier incidents even though he was not alleging a company-wide policy but only a series of "plausibly related" acts of discrimination directed at him because of his identification as a Mexican-American. Sosa, 920 F.2d at 1456. Similarly, the Ninth Circuit held in Anderson, a hostile work environment case, that the Plaintiff could prevail under the continuing violation theory "by presenting evidence that the FBI engaged in a 'systematic policy of discrimination' or by presenting evidence of a series of related discriminatory acts directed at her by FBI personnel." Anderson, 190 F.3d at 936. The Anderson court specifically held that viewing earlier events in the "context of the totality of [Anderson's] relationship with the FBI," it is apparent they were "part of a pattern that started years ago and that had continued to the time she first made a timely complaint, and even beyond." Id. at 937.

Although persuasive, the cases cited by Plaintiff are not binding on this Court.

12

The United States Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claims. Morgan indicates that although related discrete acts may be time-barred, such acts may be viewed as background evidence when considering acts of discrimination that have been timely alleged. 536 U.S. at 113, 122 S.Ct. at 2061.[5] We review the law applicable in this Circuit on continuing violation theory. "The continuing violation theory allows 'a plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." Rush v. Scott Specialty Gases, 113 F.3d 476, 480 (3d Cir. 1997)(quoting West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). For the theory to apply, a Plaintiff must fulfill a two-part test: First, the plaintiff must demonstrate at least one discriminatory act occurred within the statutory period. Second, the plaintiff must show a continuing pattern of discrimination, i.e. something more than just an occurrence of isolated or sporadic acts of intentional discrimination. Id. (citing West, 45 F.3d at 754-55). In evaluating the second prong, courts should consider the subject matter, frequency and permanence of the discrimination. Id. (citations omitted); LaRose v. Phila. Newspapers, Inc., 21 F.Supp.2d 492, 498 (E.D. Pa. 1998). In examining the statute of limitations argument presented by Defendant's counsel in the instant case, we held that "Plaintiff's accusations that Defendant discriminated against him with respect to pay for over twenty years since the 1970s are vague and non-specific as to time and are remote from Plaintiff's 1998 retirement." See

_____

[5]         Neither Plaintiff nor Defendant ever cited Morgan in connection with this case.

Document No. 117, 3/2/10 Mem. Op.   Exclusion of the  historical inequities evidence was *not* based upon the fact that the statute of limitation barred an action for such claims.

Plaintiff next contends that this Court erred in excluding historical inequities evidence because "'Me-Too' evidence of non-parties is admissible in discrimination litigation" citing <u>Sprint/United Management Co. v. Mendelsohn</u> _____ US _____ (2009).[6] Pl.'s Mem. Law in Supp. Mot. New Trial, pp. 10-11.  In <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008), the United States Supreme Court held that evidence by nonparties alleging discrimination at the hands of supervisors who played no role in challenged employment decisions is "neither per se admissible nor per se inadmissible," <u>id.</u> at 381, 128 S.Ct. 1140, and that district courts must engage in a "fact-intensive, context-specific inquiry" to determine whether to exclude such evidence under Rule 403.  <u>Id.</u> at 388.  The <u>Mendelsohn</u> Court did not rule that Plaintiff's "me too" evidence was inadmissible per se.  Rather, the Court considered the relevance and prejudicial effect of the proffered evidence "in the context of the facts and arguments of [this] particular case," <u>id.</u> at 1147, and only then ruled the evidence inadmissible.  In making the pretrial decision to exclude evidence of historical inequities, I considered the relevance and the prejudicial effect of the proffered evidence and then ruled the evidence inadmissible in accordance with the dictate of the Court in <u>Mendelsohn</u>.

For support of the argument that evidence of other discrimination is always admissible, Plaintiff cites <u>Phillip v. ANR Freight Sys., Inc.</u>, 945 F.2d 1054 (8th Cir. 1991), in

---

[6]        "Me-too" evidence is "testimony by nonparties alleging discrimination at the hands of persons who played no role in the adverse employment decision challenged by the plaintiff."  <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. at 383, 128 S.Ct. at 1144.

which the appellate court reversed the trial court for excluding evidence of other discrimination. Pl.'s Mem. Law in Supp. Mot. New Trial, pp. 11-12. Plaintiff contends that this rule was followed by the Third Circuit in <u>Ansell v. Green Acres Contracting Co., Inc.</u>, 347 F.3d 515 (3d Cir. 2003), wherein the Court held that evidence of an employer's conduct toward other employees is relevant and admissible to show pretext and for establishing or negating discriminatory intent. Pl.'s Mem. Law in Supp. Mot. for New Trial, p. 12. Plaintiff omits from his argument, however, the language in <u>Ansell</u> wherein the Third Circuit advises:

> A court should consider the passage of time between the other act and the act alleged to be discriminatory. There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent. *See, e.g., Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 112 (3d Cir.1999) (certain prior acts of sexual harassment against plaintiff inadmissible because they were too remote in time); *cf. Echeverri*, 854 F.2d at 645 (presence of cocaine in defendant's apartment four years after last overt act of RICO and drug conspiracy at issue, and 18 months after termination of the conspiracy, was not relevant to conspirators' knowledge or intent). Similarly, changed circumstances may also affect whether or not a subsequent good act is relevant. *See, e.g., United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir.1994) (excluding evidence offered by defendant, who was accused of stealing a check from the mail, that she failed to steal valuables placed before her by postal inspectors in a sting operation occurring five months after the offense; passage of time, combined with defendant's awareness that she was a suspect, rendered her failure to commit a similar crime "only tangentially relevant").
>     There is, however, no bright line rule for determining when evidence is too remote to be relevant. *See, e.g., United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir.1991) ("Indeed, decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value."). Any such determination must be based on the potential the evidence has for giving rise to reasonable inferences of fact which are "of consequence to the determination of the action," Fed. R. Evid. 401, and will not be disturbed on appeal unless it amounts to an abuse of discretion, <u>Glass v. Phil. Electric Co.</u>, 34 F.3d 188, 191 (3d Cir.1994).

                                        . . . .

Federal Rule of Evidence 403 states that "[a]lthough relevant, evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." A district court's explicit balancing analysis under Rule 403 should only be disturbed if it is "irrational or arbitrary." *Abrams*, 50 F.3d at 1213 (upholding district court's determination that testimony by other co-workers alleging age-based discrimination was more probative than prejudicial). Where the district court fails to explicitly articulate the Rule 403 balancing: "we [either] decide the trial court implicitly performed the required balance; or, if we decide the trial court did not, we undertake to perform the balance ourselves." *Glass*, 34 F.3d at 192 (internal quotation omitted); *accord United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir.1999).

Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 524 -525 (3d Cir. 2003).

Federal Rule 403 allows this Court to exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. This is an "umbrella rule" applied "in tandem with other Federal Rules under which evidence would be admissible." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002). Although there is a strong presumption that relevant evidence should be admitted, exclusion under Rule 403 is justified if the probative value of evidence is "'substantially outweighed' by the problems in admitting it." Id. at 1343-44. Rule 403 requires a balance between the probative value of evidence sought to be excluded and the prejudicial effect if the evidence is admitted. Glass v. Phila. Elec. Co., 34 F.3d 188, 191 (3d Cir. 1994). This "balancing inquiry is, at its core, an essentially discretionary one that gives the trial court significant latitude to exclude evidence." Kelley v. Wegman's Food Mkts., Inc., No. CIV.A. 02-1377, 2003 WL 21091390, at *5 (E.D. Pa. May 15, 2003)(citing Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 156 (3d Cir. 2002)). Moreover, "before an evidentiary ruling may be reversed for an abuse of discretion, it must be shown that 'the district court's action was

16

arbitrary, fanciful or clearly unreasonable. [The Third Circuit] will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." Id. (quoting Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002)(internal citations omitted).

After balancing the probative value and prejudicial effect of the evidence, I concluded that the proffered evidence regarding historical inequities evidence should be excluded. Because the offer of proof by Plaintiff's counsel was insufficient, including counsel's lack of clarity as to when the discrimination occurred, Connie Mazza's presumption that race was the reason that Plaintiff and Mr. Jones suffered pay disparity so many years ago, and Plaintiff's lack of proof that he and Mr. Jones asked every Superintendent for a pay increase, allowing the jury to speculate on how this disparity occurred tipped the balance toward exclusion of this evidence pursuant to Rule 403. To the extent that the proffered evidence suggested that the Defendant had a policy of paying black employees less than their white counterparts thirty years ago, the evidence was unfairly prejudicial because the issue in this case was disparity in payment of retirement benefits at the time of Mr. Houston's retirement in 1998.

**B.** **Whether the Court Erred in Refusing to Instruct the Jury That 25% Payment for Accrued Sick Days at Retirement Was A Minimum and Not A Maximum Benefit.**

At the close of the evidence on March 5, 2010, Plaintiff submitted an additional Supplemental Point for Charge which read as follows:

> In this case, the Pennsylvania Courts have determined that the Superintendent had apparent authority to determine fringe benefits under the existing Act 93 Plan, and that the Superintendent was not limited to awarding the 25% of accumulated sick pay otherwise discussed in the Act 93 Plan. Hence, as a matter of law, the 25% of accumulated sick pay mentioned in the other paragraph must be viewed as a

minimum benefit, not a maximum benefit. <u>WRAZIEN v. Easton Area School District</u> 926 A.2d 585 (Pa. Commw. Ct. 2007).

<u>See</u> Dkt. No. 125.  I held a supplemental charge conference on March 5, 2010.  During that conference, I discussed the jury instruction at issue as follows:

> The first is the plaintiff, which in the last hour and a half has filed a supplemental points for charge which I believe has probably been given to you, Mr. Freund, as well as myself in hard fashion.  This is based upon -- this is a request for a charge, and I'm going to read it into the record because it's very brief.
>
> . . . .
>
> I've reviewed that point for charge and I've read the case twice, my law clerk has read it, we've discussed it over the lunch hour.
>
> I do not believe that this case sets forth that proposition, set forth in the point, as a matter of law.  The case does hold that the superintendant [sic] did have authority to negotiate that as a fringe benefit.  I believe the case turned on that point and that's why Mr. Wrazien won the case.  That point has already been brought out in this case.  Mrs. Meck herself has testified that she believed she had the authority to do that, as she apparently did in the Wrazien case because that's cited in Judge Leavitt's opinion in the Commonwealth court.
>
> So I don't believe that requires a separate point for charge.  It was argued.  It was presented in this case.  And I really don't think it's in dispute in this case that she had that authority.  She said, and I think the plaintiff asserts that she used that.  The fact is the plaintiff is saying that she used it in a discriminatory manner.  She should have – while you have that authority and you may have discretion in doing that, you can't do it to violate somebody's rights under Title VII of the Civil Rights Act.  I believe that's a correct position, but that's for the jury to find factually in fact whether she did that.  I am going to deny that point for charge.

N.T., 3/5/10, pp. 80:11-82:3.

The additional point for charge suggested by Mr. Houston mischaracterized the holding in the Commonwealth Court case, therefore I did not give the proposed charge.  In reviewing Plaintiff's and Defendant's arguments in the instant Motion for New Trial as to Plaintiff's Proposed Jury Instruction, we again reviewed <u>Wrazien v. Easton Area Sch. Dist.</u>, 926 A.2d 585 (Pa. Cmwlth. 2007).  In that case, the Commonwealth Court specifically stated, "the

Act 93 Plan gave Meck [the Superintendent] the express right to determine the fringe benefits for retiring school administrators such as Wrazien. This includes the authority to negotiate with Wrazien and to authorize the payment of all of his unused sick days as part of his retirement package." Id. at 590.

Where a party claims that a jury instruction was erroneous as a matter of law, the instruction is reviewed to determine "whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submit[ted] the issues in the case to the jury ." Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 922 (3d Cir. 1986). A court's review of a jury instruction should be undertaken with an eye towards the instructions in their totality and "not a particular sentence or paragraph in isolation." In re Braen, 900 F.2d 621, 626 (3d Cir.1990), cert. denied, 498 U.S. 1066, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991). In addition to showing that the Court committed legal error in giving a certain instruction, a party must also show that the error had a prejudicial effect. Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000). Prejudicial legal error exists where "it 'appears to the court [that the error is] inconsistent with substantial justice.'" Id. at 1281 (citing Fed. R. Civ. P. 61).

A jury instruction must properly apprise the jury of the law, when taken as a whole. Agere Sys., Inc. v. Atmel Corp., No. CIV.A. 92-CV-864, 2005 WL 2994702, at *5 (E.D. Pa. Aug. 17, 2005) (citing McNulty v. Citadel Broad. Co., 58 Fed. App'x 556, 565 (3d Cir. 2003)(citing Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991))). As a general matter, a party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law. Id. (citing McPhee v. Reichel, 461 F.2d 947, 950 (3d Cir.1972)("It is the responsibility of the trial judge to provide the jury with a clear and accurate

statement of the law. . . .")).  This does not provide a litigant with the right to a jury instruction "of its choice, or precisely in the manner and words of its own preference." Id. (quoting Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir.1995)(citing Heller Int'l Corp. v. Sharp, 974 F.2d 850, 860 (7th Cir.1992) and Anderson v. Branen, 17 F.3d 552, 559-60 (2d Cir.1994))).

Mr. Houston received instructions that complied with the Court's duty to explain to the jury, in a dispassionate and accurate way, the current state of the law though it did not do so using each and every word that Mr. Houston proposed to the Court.  The additional point for charge suggested by Mr. Houston mischaracterized the holding in the Commonwealth Court case, therefore I did not give the proposed charge.  Neither party received precisely the jury charge that it requested, but that is not proper grounds for a new trial absent prejudicial legal error.  For the foregoing reasons, Mr. Houston's motion for a new trial based on the Court's failure to give the jury charge he requested is denied.  See Agere Sys., Inc.,  2005 WL 2994702, at *5.

### C. Whether The Court Erred and Prejudiced Plaintiff By Allowing into Evidence Testimony and Defendant's Exhibit 6 Indicating That Non-Cabinet Officials Received Only 25% of Their Accrued Sick Days.

Plaintiff next contends that the Court erred in allowing testimony and Defendant's Exhibit 6 into evidence.  Defendant's Exhibit 6 lists all Cabinet, administrators and supervisors who retired since August 31, 1995.  Plaintiff contends that Defendant was permitted to defend on the basis that it only paid non-cabinet officials 25% of accrued sick days consistently, but the non-cabinet officials were not comparators.  Therefore, according to Plaintiff, that testimony was irrelevant and highly prejudicial.  Defendant's Exhibit 6 was prepared by John Castrovinci, the Defendant's current Director of Human Resources, who testified at length about Exhibit 6.

Plaintiff objects to introduction of this list because the 25% standard for non-cabinet officials was, according to Plaintiff, irrelevant.

Defendant's Exhibit 6 included potential comparators to Plaintiff regarding retirement benefits. Plaintiff objects to the inclusion of Act 93 administrators as comparators. Defendant contends that the non-Cabinet level administrators who, like Plaintiff, are subject to the District's Act 93 plan, must be considered comparators because their status is equivalent as a matter of law. 24 P.S. § 11-1164. Defendant further argues that admitting evidence of the retirement benefits awarded to the Act 93 employees was not a substantial error that warrants a new trial because Plaintiff had ample opportunity to present evidence and arguments to the jury as to how they should interpret the retirement information provided.

The trial judge has broad latitude in ruling on questions of admissibility of evidence. U.S. v. Rockwell, 781 F.2d 985, 987 n.3 (3d Cir. 1986). Defendant's Exhibit 6 related to the question of whether Mr. Houston was treated differently and was therefore relevant. Plaintiff's counsel questioned Mr. Castrovinci extensively on cross-examination regarding Defendant's Exhibit 6, parsing out which persons on the list were cabinet members and which were not cabinet members. Thus, any prejudice to Plaintiff by inclusion of non-Cabinet members was mitigated if not eliminated by Plaintiff's counsel's cross-examination regarding Defendant's Exhibit 6.

Plaintiff also contends that defense counsel should not have been permitted to publish to the jury the chart of each non-cabinet official who only received 25% reimbursement. Although Plaintiff's counsel does not provide the exhibit number to which he objects, this Court surmises that Plaintiff's counsel refers to Defendant's Exhibit 8, entitled "Fringes, Act 93." Mr.

Castrovinci testified that Defendant's Exhibit 8 is a summary of the Act 93 benefits afforded to the Act 93 employees and is a chart of the benefits under Act 93 broken down into different categories of employees..  Defendant's counsel identified it as a schedule of benefits that flowed from Plaintiff's Exhibit 3, the Act 93 agreement for the Defendant School District.

At trial, Plaintiff's counsel objected to Defendant's Exhibit 8 on the grounds of relevancy, and this Court inquired of Mr. Castrovinci whether D-8 was prepared for the purpose of this litigation or in the ordinary course of business.  N.T., 3/5/10, pp. 35-36.  Mr. Castrovinci replied that the summary was not prepared for this litigation, but rather was in the ordinary course of business, and I overruled Plaintiff's counsel's objection.  Id. at 36.  Plaintiff's counsel did not cross-examine Mr. Castrovinci regarding Defendant's Exhibit 8.

As previously stated, the trial judge has broad latitude in ruling on questions of admissibility of evidence.  U.S. v. Rockwell, 781 F.2d at 987 n.3.  In this case, because Defendant's Exhibit 8 was prepared in the ordinary course of business and was directly related to Plaintiff's Exhibit P-3, I overruled Plaintiff's objection to testimony regarding D-8 and its admission into evidence.

**D.    Whether The Defendant Opened The Door For Admissibility of Discrimination in Salary Differential.**

During the trial, defense counsel cross-examined Mr. Houston regarding damages using Mr. Houston's deposition transcript.  Plaintiff's counsel approached the bench and advised the Court that it was his intention on re-direct and show Mr. Houston the pages of his transcript regarding Mr. Houston's testimony about historical inequities in his salary because defense counsel "opened the door" regarding this testimony.  I sustained an objection by defense counsel

and indicated that the order on the Motion in Limine would stand. Plaintiff contends that ruling was erroneous.

Federal Rule of Evidence 611(b) defines the scope of cross-examination. That Rule specifically states "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed. R. Evid. 611. On direct examination in support of his claim for emotional distress, I permitted Mr. Houston to testify regarding three specific acts of discrimination he suffered during his lifetime over the objections of Defendant's counsel. Defendant's counsel cross-examined Mr. Houston using his deposition, focusing on specific areas of questioning and the fact that Mr. Houston had not shared the prior incidents of discrimination at his deposition. Counsel specifically focused on the dearth of information provided by Plaintiff to establish his damages. This questioning did not render relevant other portions of the deposition which addressed completely different issues, and Defendant is correct in its contention that Plaintiff's deposition testimony regarding "historical inequities" was no more admissible than his live testimony regarding "historical inequities." Accordingly, Plaintiff's claim of error fails.

### E.   Whether Plaintiff Was Denied His Constitutional Right To A Fair Trial.

The Sixth Amendment, by its terms, is applicable only to criminal actions, but "the right to trial by jury [is] preserved," U.S. CONST. amend VII, in civil cases by the Seventh Amendment. Bailey v. Sys. Innovation, Inc., 852 F.2d 93, 97 (3d Cir. 1988). Plaintiff contends that the following evidentiary rulings denied Plaintiff his right to a fair trial:

23

(A) the trial court excluded evidence of racial discrimination in salary directed against Plaintiff and Al Jones; (B) by excluding this evidence of racial discrimination, the jury was led to believe that Plaintiff was treated fairly by the Defendant and he reached the highest echelon at the School District as a black employee; (C) by permitting the Defendant to introduce into evidence the non-cabinet officials, the Judge was denigrating Plaintiff's role as an official and letting the jury compare his stature to the non-cabinet officials who were not appropriate comparators; and (D) by its evidentiary rulings, Plaintiff was placed in the box of being the most promoted African American in Easton Area School District who should not be complaining about racial discrimination whereas the jury was not told about the racial discrimination in salary in the promotion.

Pl.'s Mem. Law in Supp. Mot. New Trial, pp. 16-17. Plaintiff is restating arguments previously made and discussed above. As such, there is no need to address these arguments for which Plaintiff's counsel provides no citations to the record or citation of case law to support his contention that Mr. Houston was denied a right to a fair trial.

The Court, on remand, endeavored to provide Mr. Houston with a fair and equitable jury trial. The outcome of that trial, although disappointing for Mr. Houston as the unsuccessful party, was not the product of an unconstitutional trial.

## IV. <u>CONCLUSION.</u>

Mr. Houston has failed to show the necessary substantial injustice or prejudicial error in the challenged rulings. <u>Goodwin</u>, 1998 WL 438488, at *3. Because I was within my discretion in making the challenged rulings, a new trial is not warranted and Mr. Houston's motion for a new trial is denied. An appropriate Order will follow.